1

```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF VIRGINIA
                    Alexandria Division

OPPORTUNITIES DEVELOPMENT GROUP, LLC,        )
                                             )
                             Plaintiffs,     )
                                             )
v.                                           )CIVIL ACTION
                                             )
BENJAMIN LEE ANDRUSS,                        ) 1:14-cv-62
                                             )
                             Defendants.     )
                                             )
```

REPORTER'S TRANSCRIPT FROM AUDIO RECORDING

MOTIONS HEARING

Friday, October 31, 2014

---

BEFORE:        THE HONORABLE IVAN D. DAVIS,
               Magistrate Judge, Presiding


APPEARANCES: THOMAS M. CRAIG, ESQ.
             Fluet Huber Hoang PLLC
             (Woodbridge)
             13580 Groupe Dr., Suite 200
             Woodbridge, VA  22192

                         For the Plaintiff

             BENJAMIN LEE ANDRUSS, Pro Se
             1101 S. Joyce Street
             Unit 2303
             Arlington, VA  22202

                         For the Defendant

                    ---

        MICHAEL A. RODRIQUEZ, RPR/CM/RMR
             Official Court Reporter
        USDC, Eastern District of Virginia
             Alexandria Division


                MICHAEL A. RODRIQUEZ, RPR/CM/RMR
```

INDEX


ARGUMENT BY PLAINTIFF                                    4

ARGUMENT BY DEFENDANT ANDRUSS                            10

COURT RULING                                            25

        (Taken under advisement)

        (Court recessed)


                              ---

THE CLERK:  Civil action 14-cv-62, Opportunities Development Group, LLC versus Andruss.

Parties please identify yourself for the record.

ATTORNEY CRAIG:  Good morning, your Honor. Tom Craig for Opportunities Development Group.

THE COURT:  Good morning.

MR. ANDRUSS:  Good morning, your Honor. Benjamin Andruss for myself.

THE COURT:  Good morning.

This matter is before the Court on the plaintiff's motions for sanctions under federal rule of federal procedure specifically requesting a default judgement against the defendant for failing to participate in discovery, as well as failing to meet court ordered deadlines, including failing to appear at the final pretrial conference and other hearings including other motions that were filed in this case.

The Court has had an opportunity to review the motion, the memorandum in support of the motion, and the defendant's response to said -- or response to said motion.

The defendant, Mr. Andruss, also filed a motion requesting that this Court order mediation between the two parties.  However, technically speaking,

that motion is not before the Court for oral argument because the defendant, Mr. Andruss, waived oral argument on that motion.

However, if the parties at some point in time today wish the Court to consider that motion, the Court will.

But right now we will start with the plaintiff's motion for sanctions.

Is there anything the plaintiff would like to add to your motion at this time?

ATTORNEY CRAIG:  Your Honor, I think our pleadings -- our motion speaks for itself.  I think there are just a couple of things I think is worth emphasizing.

First of all, I just want to let the Court know that there are two representatives of the plaintiff here this morning; the CEO, Ms. Nancy Miller, and chairman of the board of advisors, the Honorable James Woolsey, are here this morning, simply reflecting the concern that this matter has caused for my client and the damage that has been done.

The one thing I would highlight for your Honor this morning is, as I am sure the Court remembers, but to remind the Court that last time we were all together in this room, the Court strongly admonished

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Mr. Andruss that any -- we were here to talk about default judgment, and that any future failings to meet deadlines with respect to discovery would result in the Court reopening discussion on default judgment.

And since that time Mr. Andruss has missed every deadline and refused to participate in any way in discovery. And that fact alone, I think, merits the result that we have asked for.

And I would suggest -- I am happy to discuss in more detail, I would suggest that the only thing to be discussed this morning is what is the appropriate sanction, as we have laid out in our papers. We think default judgment is the appropriate sanction, and I'm happy to discuss that to whatever extent the Court desires.

As for the motion for mediation, I have no objection to discussing that this morning, your Honor. It's simply, we can't mediate this case. We -- all we have, we have our complaint, which is a verified complaint. There is a lot of evidence attached to it. We received nothing from Mr. Andruss. This case isn't postured for mediation in any event, other than by a termination by default judgment.

THE COURT:  Well, a couple questions.

Mr. Andruss, in his response to your

requests or motion for sanctions says that he -- or that you verified with him his current address on August 12, 2014. However, after seeing the certificate of service attached to your motion, it appears that -- I mean, you did say you filed everything with him via electronic mail and first-class mail postage prepaid.

But it appears that the address for the actual first-class mail postage mailing was his previous address, rather than his current address.

ATTORNEY CRAIG: So I am happy to address that issue. Two things that Mr. Andruss complained of.

First, he explained that he didn't know what the schedule was. Which, of course, we know the schedule is laid out in the scheduling order, and the joint discovery plan, which he has expressly agreed to.

The second complaint was over the service of our last motion. And it is true, I checked my records, and it is true that Mr. Andruss informed me in August that he was moving from his Joyce Street address to the address in Gunston Road.

But, frankly, what we did in this case, your Honor, first of all, Mr. Andruss received service three ways. He signed up for ECF in May. He claims he's not getting ECF. Obviously, I don't know.

THE COURT: Well, that would have been true.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

I had my law clerk look into that matter, and it appears that the clerk's office believed that an order needed -- it was a transition phase in which some judges said an order needed to go out approving that; some said it didn't. Therefore, since they didn't have an order approving him receiving electronic notifications, they never approved him for electronic notification, until yesterday when I signed said order.

ATTORNEY CRAIG: Okay. I was unaware of that, obviously, your Honor. But because Mr. Andruss is pro se, we also served him by e-mail and by hard copy. And when we filed our last motion, we checked the Court's records to see what address he had registered with the Court. And that is where we sent service, to the address he had registered with the Court.

And, of course, he is required, and I checked the pro se package to make sure I am correct on this. The pro se package makes it clear that pro se defendants have to keep, like all litigants, have to keep their current address on file with the Court so they can be properly served.

I would suggest it's a bit immaterial, your Honor, because Mr. Andruss has had the same e-mail address through all of this. We e-mailed him everything. He e-mailed me his opposition yesterday

from that same e-mail address.  And he clearly had notice of the motion because he opposed it.

So, what we did with our opposition is we mailed it to both addresses, out of an abundance of caution.  And perhaps that is what we should have done with our motion.  But, the fact, your Honor, is that he actually had service.  He received our motion, and he opposed it.  So I don't see any prejudice there.

But none of that goes to the underlying substance of our motion, the fact that up until this week, when the Court asked for order of mediation, and opposed my motion, Mr. Andruss has not participated in this case in any way since the Court admonished him to do so at our last -- at our last hearing.

THE COURT:  Well, explain to me any and all discussions you may have had with Mr. Andruss concerning discovery in this matter.

ATTORNEY CRAIG:  Well, we served discovery on him in -- we haven't had a lot of discussions between he and I, to be honest with your Honor at all in this matter.  We served discovery on him in August, and we had an e-mail exchanged in which I asked him -- I told him, I am happy to have this couriered to you or delivered to you however you want, but if you will agree, I would e-mail it to you, and he responded and

said, yes, I would agree to accept it by e-mail.

And so that was sent to him in mid-August, and with a return date of September 12th at the close of discovery.  So we gave him all the way to the end of discovery, and he e-mailed me then on September 11th -- I actually happened to be out of town that day -- and asked me -- said, I need more time to give you your discovery responses.  Can I have a week?

And I e-mailed him back and said, "Given the schedule on the case, I don't -- I can't give you a week, but I am happy to accept your discovery if you can get it to me by the close of business Monday, which would be September 15th."  And that was the last that I heard from him on the topic of discovery.  I never received any discovery from Mr. Andruss, and that was, of course, six weeks ago now.

The reason I needed it by Monday, to be fair, I did not mention this in my e-mail.  But, obviously, I needed it by Monday because Wednesday was the final pretrial.  I went to the final pretrial and, of course, Mr. Andruss didn't appear.  And that was the last communication I had with Mr. Andruss about discovery was when he asked for and I granted him an extension.

THE COURT:  And what occurred at the final

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

pretrial conference with Judge Ellis when Mr. Andruss didn't appear?  Was there any discussions about anything?

ATTORNEY CRAIG:  Well, I suggested to Judge Ellis at that conference that renewing default judgment motion would be appropriate, given his lack of participation.  And Judge Ellis actually directed me to file an appropriate motion.  He said, "Well, I think you need to file a Rule 37 motion.  You file what you want, but you need to file something."  And then he issued an order actually ordering me to promptly file an appropriate motion, and which of course we did.

THE COURT:  All right.  Thank you.

All right.  Mr. Andruss, the Court needs explanations.  Let's start with the first statement in your response to the plaintiff's request for sanctions.

MR. ANDRUSS:  Yes, your Honor.

THE COURT:  Your the first statement in paragraph 1 says:  Defendant did not receive notice from the Court as to the date of the pretrial and final trial conference.

The Court is assuming when you said as to the date of the pretrial, that was the initial pretrial conference, and then final trial conference is the final pretrial conference.

I am a little confused about that statement because you appeared at the initial pretrial conference.

How do you appear at a conference on a date in which you were not informed of?

MR. ANDRUSS:  Your Honor, I am new to the legal process.  So my understanding of what each piece is identified or called or labeled is not something that I am aware of.  I have no legal representation.  I have very limited resources to be able to go through research and identify specifically what I missed or didn't miss.

I believed I had accurately identified it as what I had missed.  Because I recall having this -- prior to that, I recall having missed one, one hearing, without knowing what the name of it specifically was.

In going through the documentation that I did have access to, I apparently wrongly believed that that was the accurate label for that.

THE COURT:  Well, that doesn't answer my question.

You are saying that you failed to participate in two conferences because you had no notice of those two conferences.  But you appeared at one conference, so you obviously had notice of that conference, because you appeared at it.

The only notice you would have gotten of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

that conference was in Judge Ellis's initial pretrial statement, his initial scheduling order, which says that a federal rule of procedure 16(B) pretrial conference will be held on Wednesday, May 14, 2014 at 11 a.m. before a magistrate judge.

You appeared in my chambers, on or about 11 a.m. on Wednesday, May 14th of this year, so you obviously had notice of that conference.

The only notice of that conference you would have received was in Judge Ellis's initial scheduling order, which means you were in possession of Judge Ellis's initial scheduling order.

If you were in possession of Judge Ellis's initial scheduling order, then you also had notice of the date and time of the final pretrial conference. Because in paragraph 3 of that same order, Judge Ellis's initial scheduling order, which tells you when and where to show up for the initial pretrial conference, it tells you when and where to show up for the final pretrial conference.

It specifically says, "the final pretrial conference will be held on Thursday, September 18, 2014 at 1 p.m."

Why didn't you show up to the final pretrial conference?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

MR. ANDRUSS:  Your Honor, the only thing I can say to that, either in going through my documentation, by that point and time I no longer had that particular document which identifies the date and time, and I wrongly presumed that I would receive another notification.

But in trying to go through the documentation that I did possess, I had either misplaced it -- but I did not have that specific piece of paper, your Honor.

THE COURT:  But why didn't you document the date and time of the final pretrial conference somewhere else, to ensure that if you lost the initial scheduling order, you would know when and where to show up, like in a paper calendar, or your cell phone, or on or piece of paper stuck to your refrigerator?

MR. ANDRUSS:  I don't have a good answer for that, your Honor.

THE COURT:  All right.  Well, let's see if you have a better answer as to why you have failed to participate in discovery.

Plaintiff's counsel has represented that he forwarded to you interrogatories and request for production of documents.  That you obviously received them because he had a discussion with you saying, we can

have this couriered to you, but if you want, we can have it e-mailed to you.  You said e-mail is fine, so they e-mailed it to you, which means you were in possession of it, which means you were supposed to answer it.

Why didn't you?

MR. ANDRUSS:  Well, your Honor, the volume of -- the volume and requirement to go through and answer all of the interrogatories for one individual, being myself, the question A, and then all the sub-questions of each first question require a massive amount of time.  I have no documentation, a limited documentation to be able to answer those questions, other than just me verbally saying either, this is correct, or this is incorrect.  I don't have the documentation that I would have at my possession while under the employment of Opportunities Development Group to accurately and honestly be able to answer all of the questions that was identified --

THE COURT:  Did you call up plaintiff's counsel and inform them of that fact?

MR. ANDRUSS:  No, your Honor.

THE COURT:  Why not?

MR. ANDRUSS:  Being uncertain as to what I say in this civil matter, and knowing that there is the potential implication for a criminal matter after this,

depending on the outcome, I have been essentially scared into the idea of not knowing what to say here, or not knowing the process, not knowing the rules, but basically being kind of forewarned by friends who are attorneys that anything you say in the civil court could come back to criminal.

THE COURT:  So your failure to participate in the discovery process, truthfully speaking, had absolutely nothing to do with your lack of documentation to accurately answer the interrogatories, or the lack of documentation to respond to the request for production.

What it really had to do with is you didn't want to respond to the discovery request because you didn't want to implicate yourself in criminal proceedings.

MR. ANDRUSS:  No, your Honor.  I would feel highly confident if I had the information.

THE COURT:  That is what you just said.  You just said, having talked to friends who also were lawyers, who essentially warned you that anything you say in this civil process could implicate you in criminal proceedings.  You stood right there in front of this Court and just said that, Mr. Andruss.

MR. ANDRUSS:  Yes, your Honor.  What I mean to clarify that with is, making a statement without --

making a statement without having documentation to support something, other than my verbal expression of it, is not something that I am comfortable with here or have ever been comfortable with prior.  To me that's --

THE COURT:  Documentation is not required to answer interrogatories.

Documentation is required to respond to a request for production of documents.

Interrogatories are questions.  The responses only need verbal answers.

MR. ANDRUSS:  Okay.  I didn't understand it as that, your Honor.  Going off from some of the questions, I believe there were two parts.  I know there was one that had an interrogatory, and I forget what the other one was labeled, a specific request for me to present documentation.

THE COURT:  Well, how do you expect this case to proceed?  Because that concept is not going to change.  If this Court, not saying it would, extended discovery and gave you two more months to respond, you still wouldn't respond because you still don't have the documentation, right?

MR. ANDRUSS:  Now knowing that the appropriate conversation would be to reach out to the plaintiff's side and being able to have that discussion,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

that would be a different --

THE COURT:  There is no discussion that needs to be had.  The interrogatories needed to have been answered, and the request for production of documents needed to have been responded to.

MR. ANDRUSS:  I understand, your Honor.

THE COURT:  But your concept is, without accurate documentation, I can't really accurately answer the interrogatories or request for production, and I feel completely uncomfortable not accurately answering them because it may impact some criminal matter.

So that concept isn't going away.  Because if there is a criminal investigation being conducted, it will be -- still being conducted after today, which means you still have no incentive to participate in the discovery process or this case, correct?

MR. ANDRUSS:  Your Honor, I believe that I would, because I know that the documentation that I had during my employment at Opportunities Development Group would -- would show a large pattern of the allegations that have been made against me and the claim as being outrageously false.

THE COURT:  Well, how come you just couldn't say that?  That's the answer to the interrogatory. Explain to us on this day why there were, you know, $250

spent out of our money on a pair of Nike shoes at this company, or this store.

Your answer if you didn't do it, say I don't have an explanation because I didn't do it.  That would be your response to the interrogatory, wouldn't it?  That doesn't require documentation, does it?

MR. ANDRUSS:  No, your Honor.

THE COURT:  But you do understand something about this concept because if the Court's not -- if the Court's memory is accurate, you did request an extension of time to respond to the discovery.

MR. ANDRUSS:  I did not file a motion for an extension of time.  I did receive -- I don't know if this is what you are referring to -- I received something electronically today, saying that I had filed something for a request for extension, but I believe that was earlier in the process, or in January for me to respond to the claim.

THE COURT:  So, what did you take of the Court's admonition at our previous motion for default judgment, when the Court informed you that if you did not participate in the discovery process, this Court would reconsider a plaintiff's subsequent request for default judgment?

MR. ANDRUSS:  Your Honor, I took it

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

seriously.

THE COURT:  Well, then why didn't you respond to the discovery subsequent to that hearing?

MR. ANDRUSS:  Because I was under the false impression that I had previously explained --

THE COURT:  No.  I made it quite clear at that hearing that you were obligated to participate in the discovery process.  And that if you did not participate in the discovery process, this Court would reconsider a plaintiff's motion for default judgment.  I left no room for interpretation.

MR. ANDRUSS:  I understand, your Honor.

THE COURT:  So why didn't you respond to the discovery?

MR. ANDRUSS:  As I said, your Honor, failure on my part at the end of the day, your Honor.

THE COURT:  And what should the Court do about that failure?

MR. ANDRUSS:  I don't know enough about the legal process to be able to provide an opinion about that, your Honor.  I believe that -- I believe that absence of my having an understanding of, one, the rules that govern the process; two, the difficulties --

THE COURT:  Mr. Andruss.

MR. ANDRUSS:  Yes, your Honor.

THE COURT:  Do you read and understand the English language?

MR. ANDRUSS:  Yes, your Honor.

THE COURT:  So where does the breakdown in understanding the process come from?  You picked up -- did you not pick up a packet, the pro se packet that I specifically instructed you at the initial pretrial conference to pick up?

MR. ANDRUSS:  Yes, your Honor, I have --

THE COURT:  Was that packet written in the English language?

MR. ANDRUSS:  Yes, your Honor.

THE COURT:  You just said you understand English, correct?

MR. ANDRUSS:  Correct, your Honor.

THE COURT:  So, what about that packet and the process that was set forth in that packet did you did not understand?

MR. ANDRUSS:  It's a foreign concept to me that I haven't gone through, your Honor.  So, understanding the documentation, even within the pro se, it still required me to reach out to individuals that have gone through the process so I fully understood what was explained there within the pro se handbook.

THE COURT:  Well, did you reach out to other

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

individuals?

MR. ANDRUSS:  Yes, I did, your Honor. Mainly unsuccessfully because most of my friends, due to this case, are no longer either speaking to me or having contact with me.  So, one or two people that are willing to provide some degree of information are really limited in what they are willing to say, which is either referring me to another website, which has a bunch of information in legalese and --

THE COURT:  Well, did you look at the Court's website?

MR. ANDRUSS:  Yes, your Honor.

THE COURT:  It is not written in legalese.

MR. ANDRUSS:  No, your Honor.

THE COURT:  It is written in plain, simple English.  The reason it is, is for -- so people who are lawyers, both lawyers and nonlawyers, can understand what they need to do in civil litigation.

Did you look at that website?

MR. ANDRUSS:  I did, your Honor.

THE COURT:  And did that insight not answer your questions?

MR. ANDRUSS:  I'd have to say no, your Honor.  Not to the point to where I --

THE COURT:  Well, why does it answer

everybody else's questions but yours?

MR. ANDRUSS:  That I -- that I can't answer, your Honor.  The only --

THE COURT:  What type of education do you have, Mr. Andruss?

MR. ANDRUSS:  I graduated high school, and I took courses at Harvard extension school.

THE COURT:  And how old are you?

MR. ANDRUSS:  37, your Honor.

THE COURT:  And, once again, tell me why you failed to participate in the final pretrial conference.

MR. ANDRUSS:  Your Honor, as you have clearly reflected, it's an indication of my misplacing the document and my failure to show up.

THE COURT:  I didn't indicate that.  You did.

MR. ANDRUSS:  I failed to show up because I misplaced the document apparently, your Honor.

THE COURT:  So, why then would you respond to their motion when you have the same concerns about anything you say might be used against you, since you don't really understand the process?

MR. ANDRUSS:  I do, your Honor.  But, at the same time -- at the same time, I want to try and come to a swift resolution to this matter.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

THE COURT:  What do you think default judgment means?

MR. ANDRUSS:  That there is -- there is -- my understanding is the Court determines what the value is.  Either it's the entirety of the total sum being asked, or that and I believe there is punitive damages or the breakdown for the motion also.

Here is what the claim is against me, the total value of that.  Here is the punitive damages and this is the legal and court costs.

THE COURT:  Now, what do you think the result would be for you if this Court granted the plaintiff's motion and entered default judgment?  What do you think the result would be?

MR. ANDRUSS:  Unfavorable, your Honor.

THE COURT:  What do you mean by "unfavorable?"

MR. ANDRUSS:  Basically, would be severed.

THE COURT:  Excuse me?

MR. ANDRUSS:  I would lose everything.  I mean, at the end of the day, that's what I viewed it as.

THE COURT:  Well, how do you know that?  Default judgment is actually a legal term.  You understand the definition of that term, but you can't understand the plain, simple English language set forth

in the pro se handbook and on the Court's website?

MR. ANDRUSS:  When I think default judgment, your Honor, that's the immediate implication as within the motion for sanctions when it identifies default judgment.  Part of what I am taking into account is that it says the sale of anything that is identified.

So I don't know how the Court applies or determines what a default judgment --

THE COURT:  So you read Rule 37?

MR. ANDRUSS:  I read the plaintiff's motion, and I believe they have attached an order following the motion, which had blank spaces next to, here is the total damages for the claim, here is the punitive damages and the legal damages.

THE COURT:  Did you understand what the plaintiff's motion meant?

MR. ANDRUSS:  Generally, yes, your Honor.

THE COURT:  Plaintiff's motion was written by a lawyer, which in this Court's experience, they typically have a tendency to use legalese, but you understood it.

MR. ANDRUSS:  I understood what the motion was specifically asking for, your Honor.

THE COURT:  But you didn't understand what the interrogatories and request for production were

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

asking for.

MR. ANDRUSS:  I didn't understand -- your Honor, whenever I answer a question, I guess -- in previous employment, if somebody ever came to me and said -- just blanketly said something, what I had learned from an individual that I worked for for a period of time, unless I have supporting documentation, it's just my opinion.  If I couldn't substantiate what I was saying, I could go out and say the sky is black, and unless I can prove that the sky wasn't black or what the color specifically what I was saying --

THE COURT:  But all you have to do is look up, and you would see it wasn't black.  That would be your corroboration.

Anything further?

MR. ANDRUSS:  No, your Honor.

THE COURT:  Anything further from plaintiff's counsel?

ATTORNEY CRAIG:  No, your Honor.

THE COURT:  Under the totality of circumstances, the Court believes that sanctions under Federal Rule of Civil Procedure 37 are appropriate in this case.

Having listened to the explanation of Mr. Andruss in regards to why he may or may not have

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

attended the final pretrial conference or attended hearings on other motions because he may or may not have received notice of those have absolutely nothing to do with the underlying basis for the motion for sanctions and request for default judgment.

That motion is based almost entirely upon the fact that Mr. Andruss has completely and wholly failed to participate in the discovery process by answering interrogatories, answering requests for production of documents, and, of course, attending the final pretrial conference in which a trial date could have been set.

We'll deal first, I think, with the motion for mediation from the defendant. The plaintiff, having no documentation, no answer to interrogatories, no depositions, would not be in a place in which he can be capable of considering settling or mediating the case because it may have insufficient information in its basis to determine whether settling this case or not settling this case is appropriate.

Therefore, the motion for mediation is denied.

Now, getting back to the motion for sanctions, the Court has already deemed that sanctions may be appropriate. So the only question is, what is

the appropriate sanction?

Well, the Court could say that less alt- -- I mean, other alternatives less than default judgment may be appropriate.

At this juncture, the Court having considered the gamut of all of those possible sanctions, but what the Court does note, that if the Court believes that default judgment was appropriate, this Court could not enter it because that would be case dispositive.

So the best this Court can do at this point in time is to take the matter under advisement and issue a report and recommendation to the district judge.

Thank you.

ATTORNEY CRAIG:  Thank you, your Honor.

MR. ANDRUSS:  Thank you, your Honor.

---

CERTIFICATE


I, MICHAEL A. RODRIQUEZ, an Official Court Reporter for the United States District Court, in the Eastern District of Virginia, Alexandria Division, do hereby certify that I transcribed the audio-recorded proceedings by machine shorthand, in my official capacity, the audio-recorded proceedings had upon the motions hearing in the case of OPPORTUNITIES DEVELOPMENT GROUP, LLC, v. BENJAMIN LEE ANDRUSS.


I further certify that I was authorized and did transcribe the audio-recorded proceedings by stenotype, the proceedings in said motions hearing, and that the foregoing pages, numbered 1 to 28, inclusive, constitute the official transcript of said audio-recorded proceedings as taken from my machine shorthand notes.


IN WITNESS WHEREOF, I have hereto subscribed my name this ___19th___ day of _November_____, 2014.


_____/S/_____
Michael A. Rodriquez,RPR/CM/RMR
Official Court Reporter


MICHAEL A. RODRIQUEZ, RPR/CM/RMR