IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

OPPORTUNITIES DEVELOPMENT          )
GROUP, LLC,                        )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        Civil Action No. 1:14-cv-00062 (TSE/IDD)
                                   )
BENJAMIN LEE ANDRUSS,              )
                                   )
            Defendant.             )
_____)

F I L E D
MAR – 3 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

### REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff, Opportunities Development Group, LLC's ("ODG" or "Plaintiff") Motion for Sanctions Under Federal Rule of Civil Procedure 37. (Dkt. No. 36.) This Motion has been fully briefed, and argument on the Motion was heard on October 31, 2014. At the conclusion of the October 31, 2014 hearing, the undersigned Magistrate Judge took the matter under advisement to issue this Report and Recommendation. Upon careful consideration of the Verified Complaint, the Motion for Sanctions and supporting documentation thereto, and the relevant portions of the record, the undersigned recommends that Plaintiff's Motion for Sanctions be GRANTED in part and DENIED in part.

## I.    INTRODUCTION

On January 22, 2014, Plaintiff, a strategic consulting firm, filed a Verified Complaint against its former Chief Operating Officer, *pro se* Defendant Benjamin Lee Andruss ("Mr. Andruss" or "Defendant"), alleging counts of conversion, fraud, breach of fiduciary duty, defalcation while acting in a fiduciary capacity, and unjust enrichment. (Compl. ¶¶ 1, 5-6, 11-14, 60-83.) At the Final Pretrial Conference on September 18, 2014, Plaintiff reported to the District

1

Judge that Defendant had failed to comply with any discovery requests prior to the discovery deadline. (Dkt. No. 35.) Plaintiff filed the instant Motion for Sanctions seeking entry of default judgment pursuant to Rule 37; or, in the alternative, for the Court to strike Defendant's Answer, bar any defenses, and order a presumption that honest responses to Plaintiff's unanswered discovery would support Plaintiff's claims. (Mot. Sanctions at 1.) Because the facts giving rise to the need for sanctions are undisputed, the undersigned finds that Defendant's failure to participate in discovery for nearly five months—other than attending the Initial Pretrial Conference—warrants default judgment in this case.

## II.    FACTS AND PROCEEDINGS

On April 8, 2014, on Defendant's motion, the Court extended the deadline to respond to the Complaint from March 31, 2014 to May 7, 2014. (Dkt. Nos. 5, 7.) Meanwhile, discovery commenced on April 23, 2014, when the District Judge issued a Scheduling Order setting the Initial Pretrial Conference for May 14, 2014, the discovery cut-off for September 12, 2014; and, the Final Pretrial Conference for September 18, 2014. (Dkt. No. 9.) Although Plaintiff and the *pro se* Defendant developed a joint discovery plan, Defendant failed to submit a timely Answer to the Complaint by the Court-ordered deadline. (Dkt. Nos. 19, 25.) The undersigned addressed this issue with the parties at the Initial Pretrial Conference on May 14, 2014, which was conducted in the Court's chambers. The undersigned instructed Defendant that he was required to participate in the litigation, including by filing an Answer, and directed him to acquire *pro se* materials provided by the Clerk of the Court. Subsequently, on May 28, 2014, the Court issued a Rule 16(b) Scheduling Order finalizing additional discovery deadlines. (Dkt. No. 20.)

In the interim, Plaintiff filed its first Request for Entry of Default in light of Defendant's failure to timely respond or answer. (Dkt. No. 14.) The Clerk of the Court entered default on

May 20, 2014, and Plaintiff filed its Motion for Default Judgment the same day. (Dkt. Nos. 15-16.) In its motion, Plaintiff questioned Defendant's willingness to defend the case and cited concerns that ongoing delays were prejudicing its ability to recover its lost assets. (Dkt. No. 17 at 2-3.) Plaintiff appeared for argument on the motion on June 13, 2014, but Defendant did not attend the hearing. (*See* Dkt. No. 21.) Although the Court initially took the Motion for Default Judgment under advisement, Defendant filed an Answer denying Plaintiff's allegations on June 30, 2014 and moved to dismiss default. (Dkt. Nos. 24-25.) Defendant's motion highlighted that he "had not had a fair opportunity to present [his] defenses" and disputed any prejudice to Plaintiff as no "discovery . . . testimony . . . [or] evidence [had been] adduced concerning liability or damages." (Dkt. No. 29 at 3.)

On July 11, 2014, the Court held a hearing on the matter of default judgment. The undersigned ordered the entry of default vacated given Defendant's apparent intention to defend the case and Fourth Circuit policy that cases should be decided on the merits rather than disposed of on technicalities. (*See* Dkt. No. 31.) The Court instructed Defendant that he must participate in discovery, and warned him that a failure to either propound or answer discovery requests, or to participate in any other fashion, would move the Court to reconsider a second motion for default judgment.

At the September 18, 2014 Final Pretrial Conference, however, Defendant again failed to appear. (Dkt. No. 35.) Plaintiff's counsel informed the District Judge that Defendant had not complied with any discovery requests and, as a result, no trial date was set. (*Id.*) Pursuant to the District Judge's instructions, Plaintiff filed its Motion for Sanctions contending that Defendant violated the Court's April 23, 2014 and May 28, 2014 Scheduling Orders. (*Id.*; Mot. Sanctions at 1.) Specifically, Plaintiff asserts that Defendant has failed to: (1) appear at motion hearings, (2)

serve discovery requests, including initial Rule 26(a)(1) disclosures; (3) provide responses to August 12, 2014 requests for interrogatories, requests for production of documents, and a demand for admissions; (4) file required Rule 26(a)(3) disclosures, including witness and exhibit lists, prior to the Final Pretrial Conference; and (5) attend the Final Pretrial Conference itself. (Dkt. No. 35; Mem. Supp. Mot. Sanctions at 4-6.)

Defendant's responses to the Motion for Sanctions, as well as his statements at the October 31, 2014 hearing on the Motion, do not dispute this lack of participation.[1] Defendant acknowledged receiving the District Judge's Scheduling Order, but either misplaced or lost the document at a later time. (Hr'g Tr. 11:18-13:18.) He also e-mailed Plaintiff's counsel on September 11, 2014 to request additional time to respond, but did not communicate or provide any discovery thereafter despite Plaintiff's agreement to a three-day extension. (Mem. Supp. Sanctions at 4.) Defendant further explained that he was not comfortable answering Plaintiff's interrogatories without the necessary documentation to support his answers, but never informed Plaintiff's counsel of these concerns. (Hr'g Tr. 13:22-15:6.) Finally, Defendant stated that he feared the impact his disclosures might have on a potential criminal investigation after being warned by certain friends who are attorneys. (Hr'g Tr. 14:19-18:7.)

### III.   LEGAL STANDARD

This Court has the discretion to sanction litigants for discovery misconduct. *See Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d. 88, 92 (4th Cir. 1989) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)). Federal Rule of Civil Procedure 16 governs a court's authority to impose sanctions, including rendering a default

---

[1] Defendant ostensibly requested an extension of the discovery deadline and for the Court to order the parties to mediation. (Dkt. Nos. 39, 43-44.) Defendant also alerted the Court that he was not receiving electronic notifications despite filing a registration form on May 14, 2014. (Dkt. Nos. 13, 43 at 1.) Due to an administrative error, this application was not approved until October 30, 2014. (Hr'g Tr. 6:25-7:8; Dkt. No. 41.) Nevertheless, Defendant was receiving notices by mail from the Clerk's Office and Plaintiff served Defendant by both electronic and postal mail. (Hr'g Tr. 7:9-8:8.)

judgment against the disobedient party, for failure "to appear at a scheduling or other pretrial conference" or to "obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f); *see also Rabb v. Amatex Corp.*, 769 F.2d 996, 999 (4th Cir. 1985) (acknowledging that default is among the penalties authorized by Rule 16 for violating discovery orders). Rule 37(d) authorizes courts to impose sanctions without an intervening order if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or a written response." Fed. R. Civ. P. 37(d)(1)(A)(ii).

Default judgment differs from other sanctions because it stands in tension with the party's right to trial by jury and a fair day in court. *Richards*, 872 F.2d at 92 (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977)). The most severe Rule 37 sanctions must be available in appropriate cases, however, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League*, 427 U.S. at 643. To balance these competing interests, the Fourth Circuit has articulated four factors the district court must consider when selecting a Rule 37 sanction: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that non-compliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). Additionally, the Fourth Circuit has emphasized the importance of clearly warning defendants in advance that default is a possible consequence of failing to satisfy court orders. *See Hatchcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995).

## IV.   DISCUSSION

Applying the four factors outlined in *Anderson*, the undersigned Magistrate Judge finds that default judgment, pursuant to Rule 16(f) and Rule 37(b)(2)(A)(vi), is an appropriate sanction in this case.

### A. Bad Faith

The undersigned finds Defendant has acted in bad faith by ignoring the Court's April 23, 2014 and May 28, 2014 Scheduling Orders, missing the Final Pretrial Conference without explanation, and disregarding the Court's verbal warnings to participate in this litigation. In this Circuit, "bad faith includes willful conduct, where the party clearly should have understood his duty to the court but nonetheless deliberately disregarded it." *Axiom Res. Mgmt., Inc. v. Alfotech Solutions, LLC*, No. 1:10cv1011, 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011) (citations omitted) (internal quotation marks omitted). Here, Defendant does not dispute receiving notice of the Court's orders or Plaintiff's discovery requests, and he does not assert that he did not understand his obligation to respond. At the October 31, 2014 hearing, Defendant stated that he took the Court's warning about the risk of default judgment seriously, yet he failed to observe any part of the discovery timetable and has withheld even the most basic information from the Plaintiff and the Court. Such willful disregard of the Court's orders and instructions amounts to bad faith.

### B. Prejudice to the Plaintiff

The undersigned finds Defendant's actions have caused prejudice to the Plaintiff and left this case entirely in limbo. Defendant has not answered or propounded discovery, or filed any of the pretrial disclosures directed by the Court. Indeed, the record merely contains the largely boilerplate denials provided in Defendant's untimely Answer. A trial date could not be set due to

these deficiencies and Defendant's absence at the Final Pretrial Conference. These failings are all the more remarkable given that Defendant's first attempt to avoid default judgment was premised on having an opportunity to adduce evidence and present his defenses. After a nearly five-month discovery period, Defendant has failed to take any steps to further these objectives, and his disregard for the discovery process has hindered Plaintiff's ability to properly litigate this matter. Thus, Defendant's unwillingness to engage in discovery has materially prejudiced the Plaintiff.

### C. Need for Deterrence

The undersigned finds that the need for deterrence weighs in favor of a serious sanction. Other than submitting a joint discovery plan and attending the Initial Pretrial Conference, Defendant has been essentially absent from the discovery process. Courts must have the ability to effectively manage their cases, and parties are expected to take the Court's orders, instructions, and timelines seriously. While *pro se* litigants are entitled to some deference, they are also subject to "the respect for court orders without which effective judicial administration would be impossible." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989). Accordingly, Defendant's disregard for the Court's scheduling and pretrial orders, as well as his obligations under the Federal Rules of Civil Procedure, is behavior that warrants deterrence in this case.

### D. Effectiveness of Less Drastic Sanctions

Finally, the undersigned finds that lesser sanctions would not be appropriate. As discussed above, there is a need to deter Defendant's behavior. Moreover, imposing a less severe sanction and allowing this matter to proceed to trial, with no discovery whatsoever having been provided by the Defendant to the Plaintiff, would be an inefficient use of judicial resources. This is particularly true where the Defendant has not asserted affirmative defenses other than a simple

7

denial of Plaintiff's allegations. Crucially, even if the Court were to re-open discovery, an extension of time would not alter the key reason Defendant failed to participate in the first place. Defendant made it clear that he did not confer with Plaintiff's counsel regarding discovery or respond to discovery requests because of the specter of a criminal investigation. Consequently, the undersigned is not persuaded that Defendant would have an incentive to meaningfully engage in discovery even if granted additional time to do so.

Accordingly, the undersigned finds that the four-factor test weighs in favor of default judgment against Defendant.

## V.   EVALUATION OF PLAINTIFF'S COMPLAINT

Before entering default judgment, the undersigned Magistrate Judge must evaluate the complaint to ensure that it states a legitimate cause of action. *See Anderson*, 155 F.3d at 506 (holding the district court erred in granting default judgment where plaintiff failed to state a claim). A defendant in default admits the factual allegations in the complaint. Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court must also have subject matter and personal jurisdiction over the defaulting party.

Rule 55 provides that a court may conduct a hearing to determine the amount of damages, establish the truth of an allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). In some circumstances, a district court entering default judgment may award damages ascertainable from the pleadings without holding a hearing. *See Richards*, 872 F.2d at 91, 94 (affirming default judgment as a sanction for discovery abuses, including over $8 million in damages awarded without a hearing).

8

### A.  Jurisdiction and Venue

The undersigned finds this Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000. (Compl. ¶ 3.) ODG is a Delaware limited liability company with its principal place of business in Washington, D.C. (Compl. ¶ 1.) ODG's sole member is also a citizen of Washington, D.C. (Dkt. No. 23.) Mr. Andruss is a Virginia citizen who resided in Arlington, Virginia at the time the Complaint was filed.[2] (Compl. ¶ 3.) Thus, because the parties are completely diverse and the amount in controversy has been satisfied, this Court has valid subject matter jurisdiction.

This Court may exercise personal jurisdiction over the Defendant because he is a Virginia resident. Venue is also proper in this Court, pursuant to 28 U.S.C. § 1391(b), because Mr. Andruss is a natural person who resides in this judicial district. (Compl. ¶ 4.)

### B.  Service of Process

Federal Rule of Civil Procedure 4(e) governs service upon individuals within a judicial district of the United States. Rule 4(d) also allows a plaintiff to notify a defendant subject to service under Rule 4(e) "that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d)(1). On January 29, 2014, Plaintiff served Defendant with notice of the Summons and Complaint, and a request for waiver of service. (Dkt. No. 3.) Defendant voluntarily executed the waiver on February 4, 2014. (Dkt. No. 4.) Therefore, the undersigned finds that service of process was proper pursuant to Rule 4(d).

### C.  Liability

Plaintiff asserts five claims in its Verified Complaint: Count I (Conversion); Count II (Fraud); Count III (Breach of Fiduciary Duty), Count IV (Defalcation While Acting in a

---

[2] Defendant has since relocated to Alexandria, Virginia.

Fiduciary Capacity), and Count V (Unjust Enrichment). (Compl. ¶¶ 60-83.) Because Plaintiff seeks to recover the same relief on each count, it is not necessary to address every claim.[3] The following recommendations are limited to the conversion count because it is the central allegation in this matter, and the facts alleged support a finding of liability.

### 1. Conversion

Under District of Columbia law,[4] a plaintiff properly pleads the tort of conversion by alleging "an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property." *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1063 (D.C. 2014) (emphasis omitted) (citation omitted). Although generally applicable to chattel, "[m]oney can be the subject of a conversion claim . . . if the plaintiff has the right to a specific identifiable fund of money." *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013) (quoting *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 176 (D.D.C. 2013)).

Plaintiff has alleged sufficient facts to establish its possessory rights over specific funds, as well as Defendant's liability for converting these assets. The property at issue is certain monies withdrawn from ODG's primary business banking account—CitiBusiness Flexible Checking Account -9138—between March 1, 2013 and December 31, 2013. (Compl. ¶ 14; Ex. D.) Plaintiff asserts that Defendant served as ODG's Chief Operating Officer during this time period, and he was an authorized signatory on account -9138. (Compl. ¶¶ 10-15.) It is undisputed

---

[3] Count V of the Complaint seeks establishment of a constructive trust on Defendant's property obtained through improper means, as well as any proceeds from the sale of this property. Plaintiff has not pursued this request in its Motion for Sanctions.

[4] In evaluating Plaintiff's conversion claim, this Court applies the law of the District of Columbia. Virginia's choice of law rules dictate that a tort claim is governed by the "law of the place of the wrong," the *lex loci delicti. See Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 n.9 (E.D. Va. 2001) (citations omitted). Here, Plaintiff appears to have sustained the loss of its money in the District of Columbia. Therefore, the undersigned applies District of Columbia law to Plaintiff's conversion count.

that Defendant held an ODG corporate debit card (XXXX-XXXX-6507) associated with this bank account. (Dkt. No. 25 at ¶ 15; Compl. ¶¶ 14-15; Ex. C.) Although Defendant's job responsibilities did not include travel or entertaining current or prospective ODG clients, Plaintiff alleges that he used the corporate debit card and access to the ODG account to make hundreds of unauthorized transactions for personal use, including medical expenses, restaurant meals and bar tabs, purchases of fine jewelry, luxury men's clothing, air travel, and hotel stays. (Compl. ¶¶ 11-13, 17-19; Exs. D-E.)

Copies of ODG's bank statements for the period of March 1, 2013 to December 27, 2013 detail these expenditures. (Compl., Ex. D.) The transactions at issue also include ATM cash withdrawals using debit card -6507, check withdrawals, and wire transfers to accounts in Defendant's name. (Compl. ¶¶ 27-43.) Plaintiff further alleges that these transactions were neither expressly authorized by ODG's CEO, Nancye Miller, nor reimbursable by the company as proper business expenses. (Compl. ¶¶ 8-9, 13, 16, 27, 40.) As a result of Defendant's diversion of ODG funds, the company suffered ongoing cash shortfalls and required capital contributions from the CEO to meet its expenses. (Compl. ¶¶ 48-53.)

Based upon a full review of the pleadings, the undersigned finds that Plaintiff has pled sufficient facts to support its conversion claim against Defendant. The Complaint properly alleges that Defendant's misappropriation of specific corporate monies for personal use violated Plaintiff's right to full possession of these assets. Consequently, the undersigned finds that Plaintiff has provided an appropriate basis for default judgment as to Count I of the Complaint.

### 2. Damages

A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, the undersigned finds that Plaintiff is

11

entitled to a judgment of $341,436.61 on its conversion claim, representing $97,184.14 in unauthorized ATM withdrawals; $158,142.55 in unauthorized debit card purchases; $73,742.42 in unauthorized wire transfers; and, $12,367.50 in unauthorized check disbursements between March 1, 2013 and December 27, 2013. (Compl. ¶¶ 26, 37; Ex. E.) In so far as Plaintiff seeks to recover $500,000 in punitive damages, such a request should be denied. While acknowledging the serious nature of the allegations against the Defendant, the undersigned is not persuaded that sufficient facts have been pled in the Complaint—as opposed to a formulaic recital of the elements required to award punitive damages[5]—to justify this relief.

### D. Attorney's Fees and Costs

Rule 16(f) instructs that a court "must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). The undersigned does not find that the circumstances before it warrant denial of an award of reasonable attorney's fees and costs. Defendant has willfully disregarded his discovery obligations and this Court's scheduling and pretrial orders. As of the date of this Report, the Court is not aware of any steps Defendant has taken to attempt to redress these failings. Accordingly, the undersigned recommends that Plaintiff's counsel file an affidavit with the Court by March 13, 2015 identifying the amount of attorney's fees and costs incurred in seeking discovery from Defendant, including the fees and costs associated with preparing and arguing the Motion for Sanctions at the October 31, 2014 hearing. The undersigned recommends that the Court make a final determination of the award

---

[5] A plaintiff must prove by a preponderance of the evidence that the defendant's acts are "accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 71 (D.D.C. 2002) (quoting *Mason v. Rostad*, 476 A.2d 662, 667 (D.C. 1984)).

upon receipt of this affidavit.

## VI.    RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Sanctions be GRANTED in part and DENIED in part. The Motion should be granted as to entering default judgment as a sanction against Defendant, Benjamin Lee Andruss. The Motion is denied as to Plaintiff's alternative request that the Court strike Defendant's Answer, bar any defenses, and order a presumption that honest responses to Plaintiff's unanswered discovery would support Plaintiff's claims. The undersigned finds that Plaintiff is entitled to compensatory damages in the amount of $341,436.61, plus reasonable attorney's fees and costs as recommended herein, and interest at the legal rate until paid.

## VII.    NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record and to Defendant at the following address:

      Benjamin Lee Andruss
      3346 Gunston Road
      Alexandria, VA 22302

                         /s/
                    Ivan D. Davis
                    United States Magistrate Judge

March 3, 2015
Alexandria, Virginia